FILED

2013 Dec-17  PM 04:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MARCUS CHARNETSKI,                    )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )          Case No. 7:12-cv-01937-TMP
                                      )
METROPOLITAN LIFE INSURANCE           )
COMPANY,                              )
                                      )
            Defendant.                )

## MEMORANDUM OPINION

This action is before the court on the motion by Marcus Charnetski ("Plaintiff"), filed on April 22, 2013, for judgment as a matter of law.  (Doc. 11).  Plaintiff argues that there is no genuine issue of material fact as to whether he is disabled and whether Metropolitan Life Insurance Company's ("MetLife") decision to deny his claim was wrong, unsupported by the evidence, and arbitrary and capricious.  The matter has been briefed by both parties, and both parties have submitted evidence in support of their positions.  Parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.

## I.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

After the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 75 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences form the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

3

## II. FACTS

Plaintiff asserts claims arising from the denial of his application for benefits under the Barkley Pontiac-Cadillac-GMC Trucks, Inc. long-term disability plan (the "Plan"), of which MetLife is the fiduciary.  Plaintiff asserts that denial of his application for long-term disability benefits was in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Plaintiff is an insured under the long-term disability policy available through Barkley Pontiac-Cadillac-GMC.

For purposes of deciding Plaintiff's motion for summary judgment, the following facts are considered to be undisputed or viewed favorably to the non-moving defendant.

### A.  BARKLEY PONTIAC-CADILLAC-GMC TRICKS, INC.'S DISABILITY PLAN

Barkley Pontiac-Cadillac-GMC Trucks, Inc. is the plan sponsor and plan administrator. MetLife is the Plan's claim administrator.  The Plan provides long-term disability benefits to eligible employees.  It is funded by MetLife through a group insurance policy.  MetLife, the defendant, is the claim administrator, but not the plan administrator.  (Doc. 11-3, P. 4). According to MetLife, the Plan does not grant discretionary authority to determine eligibility for plan benefits.  (Doc. 11-3, P. 4-5).  Under the Plan:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury you are receiving Appropriate Care and treatment from a Doctor on a continuing basis; and

1.  during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation from any employer in your Local Economy; or

2.  after the 24 month period, you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

(Doc. 11-1, P. 18).

The Plan limits the duration of monthly benefit payments to 24 months if the participant is disabled due to "neuromusculoskeletal and soft tissue disorder ... unless the disability has objective evidence of seropositive arthritis; spinal tumors, malignancy, or vascular malformations; radiculopathies; myelopathies; traumatic spinal cord necrosis; or musculopathies."  Radiculopathy, with which Plaintiff claims to be suffering, is defined as a "disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology."  (Doc. 11-1, P. 27).

In order to qualify for disability benefits, the Plan requires that the claimant provide proof of disability.  The Plan's definition of proof includes, but is not limited to, 1) the date disability began, 2) the cause of disability, and 3) the prognosis of the disability.  The Plan also requires the claimant to provide a signed authorization for MetLife to obtain medical information that may be reasonably required to support the disability claim.  (Doc. 11-1, P. 31).  Although the Plan

defines what may be considered "proof" of disability, it does not define what will be considered "objective evidence" to support the diagnosis of radiculopathy under the Plan.

## B.  CHARNETSKI'S HISTORY

Plaintiff was employed by Barkley Pontiac-Cadillac-GMC Trucks, Inc., as an automotive technician, for approximately 7 years.  His disability claim is based on a back injury he sustained in 2005 while lifting a heavy transmission on the job.  On August 12, 2005, Plaintiff underwent an L4-5 hemilaminectomy with microdiskectomy, performed by Dr. Bryan Givhan.  Plaintiff returned to work, but continued to suffer from back pain.  Eventually, Plaintiff was referred for chronic pain management.  On March 10, 2009, Plaintiff became unable to do his job due to pain from the injury.  Plaintiff applied for Social Security Disability Insurance Benefits, as required by the Plan, and was ultimately approved.  MetLife is entitled to offset the amount of benefits it pays out under the Plan by the amount of monthly Social Security benefit Plaintiff receives.

Plaintiff has been diagnosed with chronic low back pain, left leg pain, status post diskectomy at L4-5 with continued L5 radiculopathy.  (Doc. 11-1, Pp. 382, 562).  Russ Gurley ("Gurley"), a licensed professional counselor, performed a vocational evaluation on Plaintiff on August 29, 2011.  Based on Gurley's own examination of Plaintiff, along with medical records completed by Dr. Givhan and Plaintiff's treating physician, Dr. Frederick S. Graham ("Graham"), Gurley found that Plaintiff "is 100% disabled from his previous work as a mechanic and 100% disabled from all other full time gainful employment of any kind."  (Doc. 11-1, P. 390).

Plaintiff has been Graham's patient since prior to 2006.  Graham is board-certified in physical medicine and rehabilitation.  Graham stated that he found objective medical evidence of radiculopathy in the Plaintiff, specifically noting MRIs dated February 20, 2006, and January 14, 2011.  (Doc. 11-1, P. 383).  Graham stated that Plaintiff "without a doubt"  has a disease of the nerve roots supported by clinical findings of nerve pathology.  (Doc. 11-1, P. 384).  To help manage Plaintiff's pain, Graham prescribes Plaintiff 80mg of Oxycontin 3 times daily; Robaxin, a muscle relaxer; and Klonopin, which is normally an anti-anxiety drug, to lessen Plaintiff's nerve pain.  Graham stated that the medications prescribed to Plaintiff adversely affect his ability to work a full eight-hour day because the side-effects of the medication could cause Plaintiff to be unsafe when performing certain tasks.  (Doc. 11-1, P. 385).

Plaintiff received 24 months of long-term disability benefits under the Plan, but was denied further long-term disability payments on or about July 8, 2011, based on the Plan's 24 month limit for disabilities stemming from neuromusculoskeletal and soft tissue disorder. MetLife determined that Plaintiff's medical records do not support the existence of any of the specific conditions or exceptions that can lead to more than 24 months of long-term disability benefit payments.  In its letter denying long-term disability for Plaintiff, MetLife stated that "while the claimant is unable to perform the duties of his occupation and has been awarded SSDI benefits, the plan limits benefits for a disability due to a Neuromusculoskeletal and soft tissue disorder to a period of 24 months."  (Doc. 11-1, P. 422).  Petitioner appealed this decision, and on August 8, 2011, Graham provided a statement indicating that Plaintiff is not capable of performing a job for eight hours per day and forty hours per week due to severe pain and the side effects of the narcotic pain medication used to treat the pain.  (Doc. 11-1, Pp. 381, 86).

In a letter dated September 5, 2011, MetLife stated that it would "evaluate all of the information and advise [Plaintiff] of our determination of appeal within 45 days." (Doc. 11-1, P. 392). On or around September 20, 2011, MetLife obtained a report from Dr. Neil Edward McPhee ("McPhee"), an independent physician consultant. McPhee's report opined that the record lacked objective evidence of an exception to the Plan's 24 month neuromusculoskeletal limitation. McPhee's report stated that Graham's "comment about residual weakness was not consistent with the multiple examinations recorded in the medical record," that the 2011 MRI showed "a small recurrent disc protrusion at L4-L5 equivocal for significant neural impingement," and that Plaintiff "does not have findings to diagnose an ongoing radiculopathy such as focal motor weakness, asymmetric deep tendon reflexes, or positive straight leg raise testing. An electromyogram has not been performed. Such test is commonly used to assess for radiculopathy." (Doc. 11-1, Pp. 372-73).

Before September 20, 2011, McPhee attempted to speak with Graham by telephone about the discrepancies in the two doctors' findings, but Graham did not return McPhee's telephone calls. On September 27, 2011, MetLife sent Graham a copy of McPhee's report, asking him to comment if he disagreed with the report. On the same day, MetLife sent Plaintiff's attorney a copy of the report and requested that he contact Graham to ensure that Graham received the report. On October 5, 2011, MetLife wrote Plaintiff's attorney a letter, informing him that MetLife was waiting on a response from Graham to McPhee's report, and requested an additional 45 days to render a decision on the appeal on October 5, 2011. On April 18, 2011, Plaintiff's lawyer wrote to MetLife asking about the status of Plaintiff's claim. On May 15, 2012, MetLife sent McPhee additional questions about the transcribed interview with Graham that is contained

in Plaintiff's record.  No decision was ever rendered on the appeal, and on May 22, 2012,

Plaintiff filed suit.  On May 31, 2012, McPhee responded to MetLife's additional questions,

stating that a diagnosis of radiculopathy was not supported by the 2011 MRI or the other

information in Plaintiff's record.


## III.  DISCUSSION

At issue is MetLife's decision to deny Plaintiff long-term benefits beyond 24 months.[1]  It

is undisputed that Plaintiff received 24 months of benefits.  The central question is whether

Plaintiff's injury falls within any exception to the Plan's 24-month limit on disability payments

for neuromusculoskeletal disorders, specifically, whether Plaintiff suffers from radiculopathy.

Plaintiff has presented as evidence statements from his treating physician and a fully favorable

decision from the Social Security Administration.  MetLife relies on a report submitted by their

reviewing physician, Dr. Neil McPhee, along with subsequent information provided by Dr.

McPhee, in writing.


## A.  ERISA REVIEW STANDARD

The Eleventh Circuit has explained the framework to be applied in ERISA cases as

follows:

---

[1]  Although MetLife did not actually render a decision on Plaintiff's appeal before
Plaintiff filed suit, MetLife's failure to timely render an opinion constitutes a "deemed denial"
under ERISA, and Plaintiff's claim is properly before this court.  Because MetLife failed to
provide a determination on Charnetski's appeal within the statutorily prescribed time limit,
despite having ample opportunity to establish an administrative record and make a determination,
MetLife's Motion for Administrative Remand (doc. 19) is due to be and hereby is DENIED.

ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 953, 103 L. Ed. 2d 80 (1989).  In order to fill this void, the Supreme Court held in *Firestone* that district courts should review de novo benefit decisions made by an administrator who is without discretion to determine eligibility or construe the terms of an ERISA-governed plan.  *Id.* at 115, 109 S. Ct. at 956.  On the other hand, the Court said that where the administrator exercises discretion, deferential (i.e., arbitrary and capricious)[1] review is appropriate according to trust principles, which guide review of decisions affecting ERISA-governed plans.  *Id*. at 111, 109 S. Ct. at 954.  Finally, the court observed that when an administrator with discretion operates under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  *Id*. at 115, 109 S. Ct. at 957 (quoting Restatement (Second) of Trusts § 187 cmt. D (1959)).

Following *Firestone*, we undertook the "task [of] develop[ing] a coherent method for integrating factors such as self-interest into the legal standard for reviewing benefits determinations."  *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990).  In *Brown*, we reasoned that trust principles mandated that some deferential level of review applies to benefits decisions, *id.* at 1562.  We settled on what came to be known as the "heightened arbitrary and capricious standard" (hereinafter the "heightened standard"), the hallmark of which is its burden-shifting requirement.  Under this standard, "the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest."  *Id.* at 1566.  We said that an administrator's plan interpretation that "advances the conflicting interest of the fiduciary at the expense of the affected beneficiary" was arbitrary and capricious, unless the administrator "justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries."  *Id.* at 1567.

Our more recent cases condense the holdings of *Firestone* and *Brown* into a six step analysis to guide district courts in reviewing an administrator's benefits decision:

---

[1]  Cases in our circuit equate the arbitrary and capricious standard with the abuse of discretion standard.  *See Jett v. Blue Cross & Blue Shield of Ala. Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).  We use the terms interchangeably.

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) (summarizing analysis set forth in *HCA Health Servs. Of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993-95 (11th Cir. 2001)) (footnotes omitted).


Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1355-1357 (11th Cir. 2008)

However, in Metro Life Ins. Co. v. Glenn, --- U.S. ----, 128 S. Ct. 2343, 171 L. Ed. 2d

299 (2008), the Supreme Court


held that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 2350 (quoting *Firestone*, 489 U.S. at 115, 109 S. Ct. at 957) (internal quotation marks omitted). The Court emphasized that "the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* at 2351. The Court approved the Sixth Circuit's treatment of the conflict as a relevant factor, and affirmed its decision because the

conflict, along with other factors, showed that MetLife's decision was arbitrary. *Id.* at 2351-52.

Doyle, 542 F.3d at 1359.  The Eleventh Circuit has held that "*Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision."  Id.

In the instant case, MetLife maintains that it does not have discretionary authority to administer the plan.[2]  Therefore, the review of MetLife's denial will be *de novo*, and the court's analysis will end at step (1) or step (2) of the Williams six-step analysis.  373 F.3d at 1138.  In order to be entitled to a judgment as a matter of law, the moving party (here, Plaintiff) bears the burden of proving there is no dispute of material fact, or showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden.  Celotex, 477 U.S. at 322-23.  Plaintiff argues that the medical evidence presented in this case conclusively shows that he is disabled pursuant to the terms of the plan.

The question at issue, however, is not whether Plaintiff is "disabled" under the plan - the question is whether Plaintiff is entitled to long-term disability benefits beyond 24 months because his disability results from a diagnosis of radiculopathy, and the diagnosis is supported by objective clinical findings of nerve pathology.  To prove this, Plaintiff does not have to illustrate that no other reason for his disability could ever be found, only that there is no material question that objective clinical evidence supports the finding of nerve pathology and the diagnosis of radiculopathy.  Therefore, the fact that MetLife can produce a physician that rebuts the clinical

---

[2]  Doc. 17, p. 10 n. 1.; Doc 11-3, p. 4-5.

evidence produced by Plaintiff is not, on its own, conclusive. Dr. McPhee's report does not automatically create a question of material fact. To show a question of material fact, MetLife has to show, with all reasonable inferences applied in its favor, that a question exists as to whether : (1) Plaintiff was diagnosed with radiculopathy, or (2) whether that diagnosis was supported by objective clinical findings of nerve pathology. In his report, Dr. McPhee disagrees with Dr. Graham's reading of Plaintiff's most recent MRI and suggests other tests that could have been done to support the diagnosis of radiculopathy. (Doc. 11-1, P. 51). This court does not suggest that, in order to be entitled to summary judgment, Plaintiff must undergo all available medical tests that could possibly diagnose radiculopathy.

Dr. Graham states in his transcribed interview that he diagnosed radiculopathy based on viewing Plaintiff's MRIs, which he considers objective evidence. The Plan does not provide any indication that an MRI is not objective medical evidence sufficient to support a diagnosis of radiculopathy. MetLife has not presented any evidence indicating that Graham *did not* diagnose Plaintiff with radiculopathy or that Graham's diagnosis was not supported by objective MRI evidence. Although MetLife's reviewing physician, Dr. McPhee, indicated that other tests could be done to diagnose radiculopathy, neither McPhee nor MetLife presented evidence that an MRI in itself is not objective medical evidence that could be used to support a diagnosis of radiculopathy. Plaintiff has met his burden by presenting evidence showing there is no dispute of material fact. Celotex, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  Even with all reasonable inferences applied in its favor, MetLife has failed to do so.

Because Plaintiff has illustrated that there is no issue of material fact, and MetLife has failed to rebut that evidence, Plaintiff is entitled to judgment as a matter of law.  MetLife's denial of Plaintiff's long-term disability benefits beyond 24 months was *de novo* wrong, and MetLife's deemed denial of Plaintiff's administrative appeal was also *de novo* wrong.  Because MetLife, by its own admission, was not vested with discretion in reviewing claims, the judicial inquiry under the Williams standard is ended, and MetLife's decision is due to be reversed.  373 F.3d at 1138.

## **CONCLUSION**

Having reviewed the motion, the briefs, and the evidence and arguments presented by both parties, and for the reasons outlined above, the court finds that the Plaintiff's motion for summary judgment (doc. 11) is due to be GRANTED, and MetLife's decision is due to be REVERSED.  By the entry of this summary judgment, the court has determined that Plaintiff is entitled to long-term disability benefits under the terms of the Barkley Pontiac-Cadillac-GMC Trucks, Inc., Plan retroactive to July 8, 2011.  By separate order, the court will Order defendant Metropolitan Life Insurance Company to pay such benefits.

The Clerk is DIRECTED to serve a copy of this memorandum opinion upon counsel for all parties.

DATED this the 17th day of December, 2013.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE